**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

PATRICK MULLINS                                           PETITIONER
Reg. #65817-280

V.                              NO. 2:16CV00021-BSM-JTR

C.V. RIVERA, Warden,                                      RESPONDENT
FCI-Forrest City

**RECOMMENDED DISPOSITION**

The following Recommended Disposition ("Recommendation") has been sent

to Chief United States District Judge Brian S. Miller. You may file written objections

to all or part of this Recommendation. If you do so, those objections must: (1)

specifically explain the factual and/or legal basis for your objection; and (2) be

received by the Clerk of this Court within fourteen (14) days of this Recommendation.

By not objecting, you may waive the right to appeal questions of fact.

**I. Background**

Pending before the Court is a 28 U.S.C. § 2241 Petition for Writ of Habeas

Corpus filed by Petitioner, Patrick Mullins ("Mullins"). *Doc. 1*. Mullins challenges:

(1) his "unlawful detention" at the low security unit of the Federal Correctional

Institution in Forrest City, Arkansas ("FCI-FC Low"), from January 7, 2016 through

March 15, 2016; and (2) a prison disciplinary conviction received on February 23,

2016. The issues are joined and ready for disposition.

On December 28, 2015, Mullins was incarcerated at FCI-FC's medium security unit ("FCI-FC Medium"). At approximately 3:30 p.m., the duress button was activated in the cell occupied by Mullins and Inmate Leslie Latham. When officers arrived at the cell, the inmates reported they were "having problems" with each other. Lt. Sutton ordered both inmates to submit to hand restraints. According to Lt. Sutton, after Latham was handcuffed, Mullins "grabbed Inmate Latham, threw him to the floor and began assaulting him by striking [him] with closed fists to the head and body areas."[1] Lt. Sutton ordered Mullins to cease his actions. When Mullins continued to strike Latham, Lt. Sutton subdued Mullins with pepper spray. Mullins then submitted to hand restraints, and both inmates were escorted out of the cell. Latham sustained two facial lacerations; Mullins was not injured. *Doc. 10-1 at pp. 15, 19, 23-29.*

Later that day, Lt. Sutton wrote an incident report charging Mullins with assaulting another inmate and refusing to follow orders. *Id. at p.19.*

On January 7, 2016, Mullins was transferred from FCI-FC Medium to FCI-FC Low, where he was placed in the Special Housing Unit ("SHU"). *Doc. 10-2 at pp.3, 6-7.* According to Lt. Sutton, the transfer was to "ensure no contact was made"

---

[1]Two other officers who were present also stated that, after Latham was handcuffed, Mullins moved forward as though he was going to submit to the hand restraints, and then "began assaulting Inmate Latham." *Doc. 10-1 at pp. 24-25.*

between Mullins and Latham. *Id. at p.3.*

On January 25, 2016, the disciplinary matter was suspended pending referral to the United States Attorney for investigation and possible prosecution. *Doc. 10-1 at pp.15, 22,*

On February 8, 2016, Mullins initiated this § 2241 action. In his Petition, he alleged that: (1) he had been "abruptly transferred" to FCI-FC Low, "with no explanation as to why"; (2) he was being "unlawfully detained" at FCI-FC Low even though he was classified as a "medium" security inmate; (3) he was being denied access to his "unit team," which prevented him from obtaining the necessary forms to file administrative grievances challenging his unlawful detention and conditions of confinement; and (4) his personal and legal property was being "arbitrarily and maliciously" withheld from him. *Doc. 1.*

On February 9, 2016, the United States Attorney released the disciplinary matter back to the Bureau of Prisons ("BOP") for continued administrative processing. *Doc. 10-1 at pp. 15, 22.* Later that day, the investigating officer, Lt. B. Hunt: (1) notified Mullins of the disciplinary charges; (2) advised him of his rights during the disciplinary process, which Mullins stated he understood; (3) gave Mullins a copy of

the incident report, which Mullins accepted;[2] and (4) read the body of the report to Mullins. *Id. at pp. 14, 16, 19-21*. Mullins cursed the officer about "that paper."[3] *Id. at pp. 15-16, 20-21*. According to the officer, Mullins "displayed a poor attitude during the disciplinary process," and did not identify any witnesses who could provide further information about the incident. *Id. at p.20*. Lt. Hunt determined that sufficient evidence existed for the matter to proceed, with Mullins to remain in the SHU. *Id.*

On February 10, 2016, the Unit Discipline Committee ("UDC") considered the disciplinary charges. The UDC chairman, Officer W. Plunk: (1) reported that Mullins had "no comment" to the UDC about the incident; (2) found that Mullins had "committed the prohibited act as charged"; (3) determined that the matter should be referred to a Disciplinary Hearing Officer ("DHO") "due to the severity of the incident code charged"; (4) notified Mullins that the matter was being referred to the DHO; (5) advised Mullins of his rights in connection with the DHO hearing; and (6) reported that Mullins did not request a staff representative or any witnesses for the hearing. *Id. at pp. 17, 19, 31*. Mullins signed a form acknowledging that he had been advised of his rights. *Id. at p.31*.

_____

[2]Lt. Hunt later provided Mullins with a "corrected copy" of the incident report, containing some minor "pen and ink changes." *Doc. 10-1 at pp. 15, 20.* The records do not show the date this occurred.

[3]Mullins told Lt. Hunt: "F— you, b—, take that paper and stick it in your a–." *Id. at pp. 15-16, 20-21.*

On February 23, 2016, the DHO, C. Glasgow, conducted a hearing on the disciplinary charges. Mullins was not present. The DHO stated that Mullins "refused to participate in the hearing process," had waived his right to staff representation, and had requested no witnesses. *Id. at p.14*. The DHO noted:

> Though you refused to sign the notice of discipline hearing before the DHO, I confirmed through Officer Halk's signature on page 2 of this form you were advised of your right to remain silent, your right to staff representation and your right to call witnesses. As evidenced by staff signature on the Waiver of Appearance, you refused to participate in the DHO hearing. Accordingly, this hearing was conducted in your absence.

*Id.*

The form referenced by the DHO is a "Waiver of Appearance," which states:

> I saw inmate Mullins, Patrick at 2/23/16 0.00 a.m. [sic] at Special Housing Unit and advised the inmate of the right to appear before the DHO on 02/23/2016. The inmate declined to appear at the hearing, but refused to sign a Waiver of Appearance.

*Id. at p.33.* The form is signed by the DHO and by Officer C. Halk. The "Inmate Signature" portion of the form is blank. *Id.*

In his decision, the DHO found that Mullins had committed the charged offenses and, as sanctions, disallowed twenty-seven days of good conduct time. The DHO stated that his decision was based on the "greater weight of evidence," including: (1) staff memoranda and statements from Lt. Sutton and other officers; (2) photos and medical assessments of Mullins and Latham; and (3) Mullins's decision to not appear before the DHO or provide a statement to the investigating officer or the

UDC. The DHO also stated the reasons for the sanctions he imposed. Finally, the decision stated that Mullins had the right to appeal within twenty days under the BOP's administrative remedy procedure. *Id. at pp.14-15*.

On March 2, 2016, a copy of the DHO's decision was delivered to Mullins. He "refused to sign for copy." *Id. at p.15*. Mullins did not appeal or otherwise pursue any administrative remedies regarding the disciplinary decision.

On March 15, 2016, Mullins was transferred to FCI-El Reno in El Reno, Oklahoma. *Doc. 10 at p.2*.

On May 6, 2016, Respondent filed his Response to Mullins's § 2241 Petition. Respondent argues that Mullins's habeas claims should be dismissed because: (1) he failed to exhaust his administrative remedies; (2) his challenge to detention in the SHU is not cognizable in a habeas action and is now moot due to his transfer to FCI-El Reno; and (3) his claims are without merit. *Doc. 10*.

On July 11, 2016, Mullins filed a Reply, which shifts the focus of his complaints from SHU detention to the February 23, 2016 disciplinary conviction. *Doc. 16*. Specifically, Mullins argues that: (1) the disciplinary charges were in retaliation for his complaints against various BOP officers; (2) he was denied due process in the disciplinary proceedings; and (3) BOP staff prevented him from exhausting his administrative remedies and appealing the disciplinary decision.

For the reasons discussed below, the Court recommends that the § 2241 Petition be denied.[4]

## II. Discussion

### A.      Challenge to Detention and Conditions in SHU

Article III of the Constitution limits the jurisdiction of federal courts to consideration of ongoing "cases" or "controversies." U.S. Const. art. III, § 2, cl. 1. "When, during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a change in circumstances ... and a federal court can no longer grant effective relief,' the case is considered moot." *Ali v. Cangemi*, 419 F.3d 722, 723-24 (8th Cir. 2005) (quoting *Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994)).

It is undisputed that, shortly after filing this habeas action, Mullins was transferred from FCI-FC Low – where he was allegedly being unlawfully detained in SHU and deprived of his constitutional rights – to FCI-El Reno. *See Thompson v. Smith*, 719 F.2d 938, 940-41 (8th Cir. 1983) (habeas petition alleging abuse and harassment was mooted by reason of inmate's transfer to another institution).

---

[4]The Court need not resolve the administrative exhaustion issues because, as explained below, Mullins's claims fail for other reasons. *See Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007) (addressing merits of federal prisoner's claims despite alleged failure to exhaust administrative remedies because the exhaustion prerequisite for a § 2241 petition was "judicially created, not jurisdictional").

Thus, this Court lacks jurisdiction to consider Mullins's habeas claims regarding unlawful detention and conditions in the SHU at FCI-FC Low, and those claims should be dismissed as moot.

**B.     Challenge to February 23, 2016 Disciplinary Conviction**

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court held that a disciplinary conviction which results in a prisoner losing good time credits implicates a liberty interest protected by the Due Process Clause. However, because prison disciplinary proceedings are not part of a criminal prosecution, the "full panoply of rights" due to a defendant in such a prosecution, or those mandated for parole and probation revocation hearings, need not be followed in all respects. *Id.* at 555-61. In the prison disciplinary context, due process requires only the following minimum procedural protections: (1) written notice of the disciplinary charges at least twenty-four hours before the hearing; (2) an opportunity to call witnesses and present a defense; and (3) a written statement from an impartial decision-maker identifying the evidence relied upon and the reasons for the disciplinary action. *Id.* at 563-67.

**1.     Notice of Charges**

Mullins alleges that he was never given a copy of the incident report charging

him with assaulting another inmate and refusing to obey orders.[5] *Doc. 16 at p.10.*

The BOP records refute Mullins's conclusory allegation. The investigating officer, Lt. Hunt, stated that, on February 9, 2016 – fourteen days before the disciplinary hearing – he gave Mullins a copy of the incident report and read the body of the report to him. *Doc. 10-1 at pp. 20-21.* Although Mullins indicated he did not want "that paper," Lt. Hunt stated that Mullins "accepted" the copy. Lt. Hunt later gave Mullins a "corrected copy" of the report. *Id.* On February 10, 2016 – thirteen days before the disciplinary hearing – Officer Plunk advised Mullins that the UDC had determined he had "committed the prohibited act as charged" and that the UDC was referring the charges to the DHO for a hearing. *Id. at p.19.*

The purpose of *Wolff*'s advance written notice requirement is to allow an accused inmate the chance to "marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. Mullins clearly had this opportunity through his initial encounter with Lt. Hunt, his later receipt of a "corrected copy" of the incident report, and again with Officer Plunk at the UDC hearing, when the charges were presented. All of these notifications were significantly more than twenty-four hours before the disciplinary

_____

[5]Mullins also alleges that he was not provided a copy of his "Inmate Rights at Discipline Hearing." *Doc. 16 at p.10.* Because this is not a procedural protection required under *Wolff*, no due process violation is implicated. In any event, Mullins does *not* dispute that he was advised of those rights by Officer Plunk on February 10, 2016, or that he signed the form acknowledging that he had been so advised. *See Doc. 10-1 at p.31.*

hearing. Mullins cannot create a *Wolff* due process violation by refusing to accept written notice when it is delivered by a prison officer. Accordingly, the Court concludes that Mullins was adequately notified of the disciplinary charges in time to prepare his defense.

### 2.    Mullins's Absence from Hearing

Mullins argues that his due process rights were violated because the DHO improperly conducted the February 23, 2016 disciplinary hearing without him being present. He alleges that "no one came to [his] cell to get [him] for a disciplinary hearing," he "never refused to attend" the hearing, and the DHO "falsified" the Waiver of Appearance form. *Doc. 16 at pp. 6-10, 31-32*.

Although *Wolff* did not expressly refer to a prisoner's right to attend his own disciplinary hearing, several courts have held that such a right is implicit in the prisoner's right to call witnesses and present evidence at the hearing. *See Battle v. Barton*, 970 F.2d 779, 782 (11th Cir. 1992); *Moody v. Miller*, 864 F.2d 1178, 1180 (5th Cir. 1989). However, that right is not absolute and may be waived. *Moody*, 864 F.2d at 1180-81 ("If, through no fault of prison officials, a prisoner is unable or refuses to attend a disciplinary hearing, due process requires no more than that the hearing be held in accordance with all of the other requirements of due process that are called for under the circumstances.").

Again, the BOP records refute Mullins's conclusory allegations. The Waiver of Appearance form states that, on February 23, 2016, Mullins was advised of his right to appear before the DHO, but declined to appear and refused to sign the waiver form. *Doc. 10-1 at p.33*. Mullins contends that the DHO could not have obtained the waiver because the DHO was conducting the disciplinary hearing at FCI-FC Medium on February 23, 2016, while Mullins was incarcerated at FCI-FC Low on that date, which is about one mile away. However, this overlooks the fact that the form is *also* signed by Officer Halk. As discussed, the DHO specifically noted in his decision that he confirmed with Officer Halk that Mullins had been advised of his rights in connection with the hearing, but refused to participate. *Id. at p.14*.

Furthermore, even if Mullins can prove that he did not waive his appearance at the hearing, or refuse to sign the form, this error was harmless because there is no indication that his testimony would have aided his defense, or that the outcome of the disciplinary proceeding would have been different. *See Howard v. United States Bureau of Prisons,* 487 F.3d 808, 812-13 (10th Cir. 2007) (applying harmless error analysis to due process claim that prison officials denied requested witness testimony at hearing); *Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir. 1991) (constitutional violation in adjudicating prison disciplinary proceeding is subject to harmless error analysis); *Lane v. Maye*, 2016 WL 4430672, at *4-7 (D. Kan. Aug. 22, 2016)

(applying harmless error review to alleged denial of prisoner's right to be present at his disciplinary hearing).

Mullins does not describe any exculpatory testimony, documentary evidence or statement that he could have presented at the DHO hearing that conceivably could have changed the outcome of the DHO proceeding. When he was provided the opportunity to make a statement to the investigating officer, he cursed the officer and made no statement. He had "no comment" before the UDC. In this § 2241 action, Mullins admits that he and Latham were involved in a "physical altercation" and that Mullins "grabbed [Latham] by his shirt" when Latham "tried to karate kick [him] in the head." He alleges that "Latham attacked me, not me who attacked him." Mullins also alleges that, because he is in a wheelchair and Latham is a "well-known trouble-maker," BOP staff should have known that placing them together "could result in a physical altercation and it did." *Doc. 16 at pp. 16, 19.*

In short, Mullins provides nothing to controvert the evidence presented to the DHO that: (1) Mullins assaulted Latham; (2) Latham was handcuffed at the time; (3) Mullins refused direct orders to cease his actions; and (4) only Latham sustained injuries. This evidence included statements from officers who witnessed the altercation, as well as medical assessments and photos of both inmates after the incident. Thus, even if any violation occurred under *Wolff*, as a result of Mullins's

absence from the disciplinary hearing, the error was harmless.

### 3.    Retaliatory Disciplinary Action

Finally, Mullins argues that the disciplinary action was in retaliation for his complaints against various BOP officials. *Doc. 16 at pp. 4-6, 23-25.*[6] The Eighth Circuit has made it clear that a habeas claim challenging a retaliatory disciplinary fails if the underlying disciplinary was based on a prisoner's *actual violation of a prison rule* and "some evidence" supports the violation. *Santiago v. Blair*, 707 F.3d 984, 993 (8th Cir. 2013); *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008). "Some evidence" has been construed to mean "*any* evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985) (emphasis added). This limited review by federal courts does not require examination of the entire record, independent assessment of credibility of witnesses, or weighing of the evidence. *Id.* at 455.

Applying the *Hill* standard to the facts in this case, the Court concludes that the record contains not just "some evidence" but "overwhelming evidence" to support the DHO's finding that Mullins committed the prohibited acts of assaulting Latham and refusing to obey orders to stop his attack. Three officers stated that they witnessed

---

[6]Mullins also appears to be alleging that other retaliatory actions were taken against him at FCI-FC Medium, the BOP's Oklahoma Transfer Center, and FCI-El Reno. Those generalized claims cannot be considered to be part of this habeas action, in which Mullins challenges only his SHU detention at FCI-FC Low and his February 23, 2016 disciplinary conviction.

Mullins assault Latham and that Mullins refused orders to stop. Prison officials can permissibly rely solely on violation reports to find inmates guilty of disciplinary infractions. *Id.* at 456; *Hartsfield*, 511 F.3d at 831; *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990). Furthermore, regardless of "who started it," it is clear that "some evidence" supports a disciplinary conviction for assault when one inmate strikes another and causes injuries. *See Gomez v. Graves*, 323 F.3d 610, 612-13 (8th Cir. 2003) (even though petitioner alleged he and another inmate were engaged in "mutual combat," "some evidence" supported disciplinary conviction for assault where petitioner repeatedly struck the other inmate hard enough to make the inmate's face bleed).

Because the evidence in this case easily satisfies *Hill*'s "some evidence" standard, Mullins's claim that the disciplinary action was retaliatory fails.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT this 28 U.S.C. § 2241 Petition for a Writ of Habeas Corpus, *Doc. 1*, be DENIED, and that this case be dismissed, with prejudice.

DATED this 27th day of September, 2016.

_____
UNITED STATES MAGISTRATE JUDGE